Juan Colom Soto, recurrente, *v.* El Registrador de la Propiedad de Mayagüez, recurrido.

No. 935.—*Sometido:* Noviembre 14, 1934. *Resuelto:* Enero 18, 1935.

*José Sabater,* abogado del recurrente; el registrador recurrido no compareció.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

El recurrente, Juan Colom Soto, es dueño de una finca rústica en el distrito de Mayagüez, en que cosecha café. La adquirió en 29 de abril de 1933.

Anteriormente, Sebastián Colom Soto era dueño de la misma y otorgó e inscribió un contrato de refacción en que hacía constar que había recibido de Juan Arbona & Hermano la suma de $1,785 y convenía en pagar a la referida firma $446.25, con intereses, el 30 de noviembre de 1929, y tres pagos adicionales similares bajo idénticas condiciones el 30 de noviembre de los años 1930, 1931 y 1932, respectivamente. El contrato contenía una cláusula según la cual el capital y los intereses debían pagarse del café producido en la finca en las cosechas de 1929, 1930, 1931 y 1932. Las partes no prorrogaron este contrato ni se hizo ninguna inscripción ulterior del mismo en el registro de la propiedad. En 21 de septiembre de 1934, Juan Colom Soto solicitó se cancelara la anotación del contrato de refacción agrícola. El registrador denegó la cancelación solicitada según se desprende de la siguiente nota:

"DENEGADA la cancelación del contrato de refacción agrícola a que se contrae el documento que precede, que es el *affidavit* número 696, suscrito en esta ciudad de Mayagüez, a veintiuno de septiembre último, ante el notario don José Sabater, por Juan Colom Soto, mayor de edad, casado con Angelina Delgado Cabán, agricultor y vecino de Lares, dueño actual de la finca sobre la cual pesa el referido gravamen refaccionario, y tomada en su lugar la correspondiente anotación preventiva por el término de ciento veinte días a todos los efectos legales a favor de dicho interesado Colom Soto, por el fundamento siguiente: Porque por la escritura número doscientos cuarenta y cinco, otorgada en Mayagüez, a 14 de agosto de 1929, ante el notario don Oscar Souffront, que fué objeto de la anotación de dicho contrato al folio 122 del tomo segundo de Contratos Agrícolas de Las Marías, finca número 57 duplicado, anotación letra G, con fecha 15 de agosto de 1929, el referido contrato refaccionario se practicó por un término que comprendía las cosechas de café de dicha finca de los años 1929, 1930, 1931 y 1932, que se abonarían al precio que rigiera entonces en el mercado, quedando afectas todas las cosechas de

café de la propia finca en dichos años y en los sucesivos a dicho contrato, y todos los frutos gravados en garantía del referido préstamo refaccionario ascendente a $1785 que se reseña en dicho *affidavit*, siendo por tanto necesario el consentimiento de la mercantil acreedora refaccionaria 'J. Arbona & Hermano' para la cancelación a que se refiere dicho documento, si se estima, como debe estimarse que las partes por medio de un contrato lícito extendieron el contrato hasta gravar las sucesivas cosechas después del 30 de noviembre de 1932, todo ello por nota al margen de la anotación letra G, de la finca número 57, duplicado, al folio 122 del tomo 2 de Contratos Agrícolas de Las Marías.—Mayagüez, octubre 26 del 1934.''

La sección 4 de la ''Ley sobre contratos de refacción agrícola y molienda de cañas, y para otros fines,'' enmendada por la Ley No. 66 de 1°. de agosto de 1925, página 349, dispone:

''El crédito de refacción agrícola desde la fecha de su presentación en el Registro que más adelante se establece, tendrá preferencia a los créditos posteriores de cualquier otra naturaleza, excepción hecha de los créditos por contribuciones a favor de El Pueblo de Puerto Rico, según lo dispone la ley, en cuanto a los frutos objeto del gravamen, durante los años comprendidos en el contrato y siempre hasta que el acreedor sea completamente satisfecho del importe total de su crédito.

''En el caso de que el acreedor no hubiese sido íntegramente satisfecho del crédito, durante el plazo del contrato, deberá concertar con el deudor el oportuno documento de prórroga, o promover la demanda que indica la sección 9, dentro de los seis meses subsiguientes al vencimiento del contrato.

''En consonancia con lo dispuesto en el artículo 290 del Código Civil, el adquirente en pública subasta, de una finca cuyos frutos estén gravados con un crédito refaccionario anotado en el registro de la propiedad, o en el especial dispuesto en esta ley, ora se haya verificado la subasta en una acción ordinaria, o en procedimiento para el cobro de una hipoteca inscrita con posterioridad al crédito refaccionario, o con anterioridad a éste pero constituída con posterioridad a la vigencia de esta ley, deberá optar entre permitir al acreedor refaccionario o al primero de éstos, si fueren varios, que recolecte y perciba los frutos pendientes sujetos al crédito refaccionario y realice todas las operaciones de cultivo y preparatorias a la recolección, o resarcir a dicho acreedor refaccionario el valor en tasación de los fru-

tos al tiempo de posesionarse de ellos, hasta el montante del crédito refaccionario adeudado, no excediendo del que se hubiere consignado en la anotación. En este último caso se procederá a la tasación como si se tratare de ejecutar una sentencia de desahucio contra un demandado que reclamare mejoras, labores y plantíos.

"El acreedor refaccionario que percibiere los frutos tendrá la obligación de rendir cuenta al deudor, de abonar a su crédito el producto líquido que obtuviere o la parte necesaria del mismo, y devolver el remanente, si lo hubiere, a los posteriores acreedores refaccionarios, al deudor, o al subastador, según fuera el caso, y se dispusiere por la corte. Será competente para conocer de estos procedimientos incidentales, la corte que hubiere conocido del procedimiento originador de la subasta, en los trámites de ejecución de la sentencia recaída en dicho procedimiento."

Igualmente, la Legislatura aprobó en 30 de abril de 1927 (Leyes de ese año, pág. 205) una ley en la que, entre otras cosas, se dispuso:

"Transcurridos seis meses después del vencimiento de un contrato, o vencido el término porque fuera prorrogada su anotación, en virtud de orden de alguna corte, quedarán extinguidos todos sus efectos legales, y el registrador de la propiedad respectivo tendrá el deber de extender de oficio el asiento de cancelación y procederá a destruir todos los documentos referentes a estas anotaciones extinguidas."

El recurrente sostiene que este contrato venció el 30 de noviembre de 1932 y que como no se anotó prórroga alguna del contrato, él tenía derecho a que se efectuara la cancelación solicitada. Alega que las palabras "quedando afectas todas las cosechas de café de la propia finca en dichos años y en lo sucesivos a dicho contrato" o, más especialmente, las palabras "en los sucesivos a dicho contrato" no podían interpretarse en el sentido de prorrogar el término del contrato. Sin embargo, se nos ocurre, al igual que le sucedió al registrador, que las partes deliberadamente gravaron la finca durante los años siguientes al 1932, no importa lo que la palabra "sucesivos" pueda significar. Cualquier persona que fuera al registro con la intención de adquirir la finca

hubiera sabido que las partes tuvieron en mente el cultivo de café durante los años siguientes. A nuestro modo de ver las cosas, no importa que el contrato se prorrogara indefinidamente si ésa era la intención expresa de las partes.

El recurrente también sostiene que el contrato era válido entre las partes contratantes originales, pero que él es un tercero y no podía ser afectado por un entendido entre las partes; en efecto, que él tenía derecho a llegar a la conclusión, seis meses después de noviembre 30, 1932, de que el dinero que se adeudara bajo el contrato de refacción había sido liquidado o pagado. Si admite que el contrato original era válido, conocimiento de la prórroga convenida le fué puesto de manifiesto por el registro de la propiedad.

Dados los hechos que anteceden, bajo cualesquiera circunstancias concebibles, Juan Colom Soto, a nuestro juicio, estaría obligado a inquirir si la deuda en este caso específico no había sido pagada y en su consecuencia que no podía considerársele como tercero.

En el alegato del recurrente existen algunos argumentos al efecto de que si hubiera adquirido la finca en noviembre de 1932 o dentro de los seis meses siguientes, quizá él hubiese estado obligado a respetar el contrato existente, mas no si sucedía lo contrario. Ésta es cuestión que no entendemos del todo. Él adquirió la finca en 29 de abril de 1933 y el contrato de refacción fué inscrito en noviembre de 1932; de suerte que compró tan sólo cinco meses después de haberse efectuado la inscripción en 1932. Si no estamos equivocados en ello, entonces el recurrente hubo la propiedad mientras ésta permanecía aún gravada por el contrato de refacción, bajo cualesquiera circunstancias imaginables.

*Debe confirmarse la nota recurrida.*